Rockingham, }
Nov. 8, 1916. }

### STATE v. WILLIAM H. STEVENS.

Laws 1915, c. 128, restricting the sale of lightning rods to sales by agents resident in the state, is a valid exercise of the police power for the protection of lives and property, and is not in conflict with art. 4, s. 2, of the federal constitution nor with the fourteenth amendment thereof.

The limitation imposed by Laws 1915, c. 128, s. 3, that agents shall be residents of the state applies equally to all persons whether citizens of this or of another state, and is not a violation of article 4 of the federal constitution.

Under Laws 1915, c. 128, s. 3, a licensed agent is required while so acting to maintain a residence in the state, but the provision is a regulation of the licensed agent and residence of the applicant is not essential to the issuance of a license.

In passing upon the qualification of an applicant for a lightning-rod agency under Laws 1915, c. 128, s. 3, the duty of the insurance commissioner is judicial in nature, cannot be attacked collaterally, and his wrongful refusal to license is not a bar to a prosecution for selling without a license.

APPEAL, from conviction and sentence by the municipal court of Portsmouth upon a complaint for offering for sale and selling without a license lightning rods and material for the protection of buildings from damage by lightning, in violation of c. 128, Laws 1915. Transferred from the January term, 1916, of the superior court, by *Kivel*, J., upon an agreed statement of facts, without a ruling.

July 29, 1915, the defendant, then a resident of Massachusetts, as the agent of the National Standard Company of Michigan,—the company being duly licensed to do business in this state,— at North Hampton, sold lightning rods without having a license as such agent. The defendant and the company had previously applied to the insurance commissioner for an agent's license for the defendant, which was refused for the sole reason that the defendant was not a resident of this state.

*Albert R. Hatch*, solicitor, and *James P. Tuttle*, attorney-general, (*Mr. Tuttle* orally), for the state:

The state, in the enactment of Laws 1915, c. 128 with the restriction as to the agent's residence, properly exercised its prerogative in a matter in which it had the right as a sovereign within its own territory to regulate its internal affairs: *Pembina Mining Co.* v. *Pennsylvania*, 125 U. S. 181; *Philadelphia Fire Ass'n* v. *New*

*York,* 119 U. S. 110; *Norfolk, &c. Railroad Co.* v. *Pennsylvania,* 136 U. S. 114, 118; *In re Converse,* 137 U. S. 624, 631; *Powell* v. *Pennsylvania,* 127 U. S. 678, 685; *Lafayette Ins. Co.* v. *French,* 18 Howard 404; *Nelms* v. *Edinburg &c. Co.,* 92 Ala. 157; *Smith* v. *Alberta, &c. Co.,* 9 Idaho 399.

*Pierce & Galloway* (*Mr. Galloway* orally), for the defendant.

PARSONS, C. J.　Chapter 128, Laws 1915, is entitled, "An act to regulate the sale of lightning rods." Section 1 is, "No manufacturer, person, firm, or corporation shall sell or offer for sale material used for the protection of buildings from damage by lightning until authorized to do so by a license obtained from the insurance commissioner under the provisions of this act." Section 2 contains the terms and conditions upon which such license may be issued to the manufacturer of material for the purpose of protecting from lightning. Section 3 is, "Upon written notice from a licensed manufacturer under this act of the appointment of a suitable person to act as his agent in this state, and upon the presentation of a certificate of his good reputation and moral character, signed by the mayor or selectmen of the city or town of which he is a resident, the insurance commissioner may, if he is satisfied that the appointee is a suitable person, issue to him a license as such agent, upon the receipt of a fee of two dollars. Such license shall continue in force one year from date of issue, but may be revoked at any time by the insurance commissioner for good cause and after a hearing. Such agents shall be residents of the state."

Section 5 provides a penalty for sale by an unlicensed person. It is conceded that the sale of lightning rods is a proper subject for regulation and license by the state. The power of the state to enforce the act by the infliction of a penalty for selling without a license is not controverted. The only provision attacked is the final clause of section 3 that such agents shall be residents of the state. But this provision is not a necessary element of the scheme of regulation provided. It could not be held that the legislature would not have attempted regulation of the sale of lightning rods if they had understood this particular provision was beyond legislative power. The result, if this clause is void, therefore would not be to invalidate the whole act and permit all persons to sell without license, but merely to render nugatory that portion of the act. *Opinion of the Justices,* 76 N. H. 604, 605; *East Kingston* v. *Towle,*

48 N. H. 57, 65. This apparently is the view of the defendant, for he considered it necessary to show that he applied for a license, which was refused him. The duty imposed upon the insurance commissioner upon application to him for the license of an agent, is judicial in its nature; he is to pass upon the question whether the manufacturer's appointee is a suitable person. If, acting under an erroneous view of the law, the insurance commissioner wrongfully refused to issue the license, the defendant had an ample remedy in the writ of *certiorari*. The judgment of the commissioner, that the license ought not to be granted, cannot be attacked collaterally. *Pittsfield* v. *Exeter*, 69 N. H. 336, 338. The defendant would be no better off if such attack were permitted. His claim is that he was entitled to a license, not that he had a right to sell without a license. If the correctness of the defendant's claim were conceded or established, he would still be guilty of a violation of the statute,—selling without a license. A wrongful refusal of a license is not equivalent to a license. Instead of prosecuting by proper proceedings his claim of right to a license, the defendant chose to disregard the law and must submit to the penalty. Upon the facts agreed the state is entitled to judgment.

But while the insurance commissioner is not technically a party to these proceedings, the state is represented by the attorney-general, and as he would not probably desire to press for punishment if satisfied that a license ought to have been given the defendant, the case has been considered as if it were an application to review the decision of the insurance commissioner, presenting the sole question now raised by the defendant whether the requirement of section 3, "Such agents shall be residents of the state," is in violation of paragraph 1, *s.* 2, *art.* IV of the constitution of the United States: "The citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states."

The assumption of the defendant's brief, that the statute in question discriminates against the citizens of other states, is not true in fact. The inhibition of the statute, *s.* 1, applies to every "manufacturer, person, firm, or corporation." The argument of the state's brief, in reliance upon the proposition that corporations are not citizens within the meaning of section 2, *art.* IV of the federal constitution and of the fourteenth amendment thereto, is of no assistance. The statute was not passed to restrict or regulate the admission of foreign corporations to do business in the state, but to regulate the sale of lightning rods within the state by any "person,

firm, or corporation." Every manufacturer desiring license for the sale of his product, material used for the protection of buildings from damage by lightning, within the state, may obtain it on the same terms, whether a corporation or an individual, a citizen of this state, some other state or a foreign country. If the provision of s. 3, that the agents of such manufacturer shall be residents of the state, is a limitation of the manufacturer's right, it is a limitation which applies equally to citizens of this and other states and countries. The manufacturer, not being discriminated against, cannot urge a violation as to him of article 4 of the federal constitution. There is nothing in s. 3, regulating the appointment of agents, which prohibits the license of a citizen of Massachusetts or any other state, or an alien. The essentials to a license are (1) notice, from a licensed manufacturer, of the appointment; (2) the presentation of a certificate of good reputation and moral character, signed by the mayor or selectmen of the city or town of which the appointee is resident; (3) that the insurance commissioner is satisfied that the appointee is a suitable person. These three points being made out, the commissioner is authorized to issue a license to the appointee as agent, upon the receipt of a fee of two dollars. The license continues in force for one year from the date of issue, but may be revoked at any time by the insurance commissioner for good cause upon hearing. The next sentence contains the provision to which objection is made: "Such agents shall be residents of the state." From the context it is clear that whatever the legislature had in mind by the word resident, the possession of the qualification thereby implied is not essential to the issuance of a license, but the provision is intended as a regulation of the licensed agent. Having accepted the license, he is required while acting thereunder to maintain a residence in the state. There is no provision of the statute avoiding the license if the licensed agent does not comply with the statute by maintaining a residence in the state, but failure in the licensed agent to obey the law would be good cause for revocation of the license. An expressed intention not to obey the law at the time of application for license might be sufficient evidence that the appointee was not a suitable person and justify the refusal of a license which might be at once revoked if such intention were carried out. The license in this case may have been refused upon this ground. The restriction of the statute applies equally whether at the time of license the agent is a citizen of New Hampshire or of some other state. The citizen of New Hampshire while claiming the benefit of the license cannot

abandon his residence here, nor can the citizen of another state claim the rights of a licensee without establishing and maintaining such a residence here as will comply with the law.   It was not required that the Massachusetts citizen taking out a license should become a citizen of the state, but only that he should reside here.   Although the fourteenth amendment of the federal constitution declares that citizens of the United States are citizens of the states in which they reside, there may be a temporary residence in one state, with intent to return to another, which will not create citizenship in the former. *Bradwell* v. *State*, 16 Wall. 130, 138.   This seems a sufficient answer to the claim of discrimination against the citizens of other states. The provision does not differ from legislative and constitutional provisions requiring a certain term of residence as an essential to holding office or exercising the electoral franchise.   As such provisions bear equally upon the citizens of the state and upon those who may come from other states there is no discrimination.

But it is unnecessary to rest the decision upon so narrow a ground or to take time to discuss the distinctions between residence, citizenship and inhabitancy.   See *Welsh* v. *State*, 126 Ind. 71,— 9 L. R. A. 664, 666.   The fourteenth amendment of the federal constitution prohibits any state from making or enforcing any law which shall abridge the privileges or immunities of citizens of the United States.   The federal court has refrained from definition, except in general terms, of the words *privileges* and *immunities* as used in the constitution and the amendment, preferring "rather to leave their meaning to be determined in each case upon a view of the particular rights asserted or denied therein."   *McCready* v. *Virginia*, 94 U. S. 391, 395; *Conner* v. *Elliott*, 18 How. 591, 593; *Maxwell* v. *Dow*, 176 U. S. 581; *Blake* v. *McClung*, 172 U. S. 239; *Ward* v. *Maryland*, 12 Wall. 418; *Paul* v. *Virginia*, 8 Wall. 168, 180; *Corfield* v. *Coryell*, 4 Wash. C. C. 371,—Fed. Cas. No. 3230.

But it is unnecessary to examine the cases in which these terms are discussed.   It is clear that the statute abridges the right of sale both of the manufacturer of lightning-rod material and of those who otherwise might represent him as agents.   If authority for such abridgment does not exist in the state despite the federal law, the whole statute is invalid.   But, as was said in *Giozza* v. *Tiernan*, 148 U. S. 657, 662, of the fourteenth amendment, "The Amendment does not take from the States those powers of police that were reserved at the time the original Constitution was adopted . . . it was not designed to interfere with the power of the State to protect the

lives, liberty and property of its citizens, and to promote their health, morals, education and good order." *In re Kemmler*, 136 U. S. 436, 449; *Barbier* v. *Connolly*, 113 U. S. 27, 31; *Maxwell* v. *Dow*, 176 U. S. 581, 604. Neither the article of the constitution relied upon, nor the amendment, abridges the right of protection inherent in the state and reserved when the constitution was adopted. *DeGrazier* v. *Stephens*, 101 Tex. 194,— 16 L. R. A. (N. S.) 1033; *Kohn* v. *Melcher* (*Shiras*, J.), 29 Fed. Rep. 433, 437; *Commonwealth* v. *Hana*, 195 Mass. 262, 265; *Slaughter-House Cases*, 16 Wall. 36. "The police power of the state extends to the protection of the lives, health, comfort and quiet of all persons and the protection of all property within the state; and persons and property are subjected to such restraints and burdens as are reasonably necessary to secure the general comfort, health, and prosperity. . . . The state has authority to make regulations as to the time, mode, and circumstances under which parties shall assert, enjoy, or exercise their rights without coming in conflict with any of those constitutional principles which are established for the protection of private rights and private property." *State* v. *White*, 64 N. H. 48, 50. Conflict with section 2, art. 4 of the constitution of the United States has been claimed in cases where the law limited licenses for the sale of liquor to residents of the state. In all these cases it has been considered that the state having power to regulate the sale of liquor, the limitation being intended to effect such regulation and not merely to secure a special privilege to citizens of the state was not rendered void by any provisions of the federal constitution or amendments thereof. *DeGrazier* v. *Stephens*, 101 Tex. 194,—16 L. R. A. (N. S.) 1033; *Kohn* v. *Melcher*, 29 Fed. Rep. 433; *Welsh* v. *State*, 126 Ind. 71,— 9 L. R. A. 664; *Austin* v. *State*, 10 Mo. 591; *Mette* v. *McGuckin*, 18 Neb. 323; *S. C.* 149 U. S. 781; *Trageser* v. *Gray*, 73 Md. 250,— 9 L. R. A. 780.

The same principles are now involved. Is the legislation restricting the sale of lightning rods an exercise of the police power for the protection of the lives and property of the people of the state, and if so, is the restriction complained of a reasonable regulation made in good faith for the execution of the legislative purpose? 40 L. R. A. (N. S.) 284, note. "It must be conceded that a state cannot under the guise of the police power make a discrimination for which no good reason can be assigned." *DeGrazier* v. *Stephens*, *supra*, *p.* 196. The first attempt at the regulation of the sale of lightning rods in the state is *c.* 49, Laws 1878. The severity of the penalties

then imposed for sale without license, fine not exceeding $1,000, imprisonment not exceeding one year, either or both, indicates the magnitude of the evil in the legislative mind.   The provision that license shall be issued only if the treasurer of the state shall be satisfied upon a scientific investigation that the lightning rods the licensee proposes to install are sufficient for protection against lightning, indicates a purpose to protect against fraud and from injury from unscientific installations.   While the efficiency of any rods as a protection against lightning may be questioned by some, it is common knowledge that rods improperly constructed or installed may be, instead of a protection, a menace to life and property.   By Laws 1879, *c.* 34, the license fee $500 was reduced to $100 to persons for five years residents of the state.   This discrimination being held unconstitutional (*State* v. *Wiggin,* 64 N. H. 508), the fee for license was in 1891 made $300 to all persons.   P. S., *c.* 123, *s.* 6.   By Laws 1911, *c.* 112, all special provisions relating to the sale of lightning rods were repealed, with the provision that the sale should be regulated under the statute relating to Hawkers and Peddlers, chapter 76, Laws 1897, and the amendments thereto.   Four years later, 1915, the present statute was enacted.   This statute is more comprehensive than the earlier ones, covering the sale and offering for sale in any manner of material used for the protection of buildings from lightning, while the former law related only to persons going about in the state carrying to sell, offering or exposing for sale or putting on buildings any kind of lightning rods.   Under the former statute the going about as hawker or pedler in the lightning-rod business was regulated.   The present law concerns the whole matter of sale. Section 2, already referred to as containing the conditions under which license might be issued to a manufacturer, is as follows: "Sect. 2.   No such license shall be issued until the insurance commissioner has approved of the material made by such manufacturer for the purpose of protecting from lightning, and of the manner and system of installing such material, nor until such manufacturer, person, firm, or corporation referred to in section 1 of this act has filed a bond with the insurance commissioner in the penal sum of five thousand dollars, with security satisfactory to the insurance commissioner, for the purpose of securing the payment of any final judgment that may be recovered against such manufacturer in any court of competent jurisdiction in this state, together with a written stipulation that legal process affecting such manufacturer or his agent, served upon the insurance commissioner for the time being,

shall have the same effect as if personally served upon such manufacturer or his agent within the state. When the insurance commissioner is satisfied that the manufacturer has complied with such requirements and is safe and reliable as to assets, business standing, and methods, and is entitled to confidence, he shall require to be filed with him a copy of the guarantee agreement issued by such manufacturer, which guarantee agreement must provide that, in the event of damage by lightning to property rodded by said manufacturer or his agent, money for the rodding of said building shall be returned to the owner thereof, or the damage to said building repaired. The form of such guarantee agreement shall be approved by the insurance commissioner before the issuance thereof; and upon the payment to him of a fee of fifty dollars he may issue a license to such manufacturer, to continue in force one year from date of issue. The license may be revoked at any time by the insurance commissioner for good cause, after a hearing." Laws 1915, c. 128, s. 2.

A comparison of these provisions with the earlier law shows that it was not the purpose to prohibit the use of lightning rods,—an intention which might be ascribed to the previous statute. P. S., c. 123, ss. 5, 6, 7. Instead of requiring a license fee of $300 of whoever might go about to sell, principal or agent, the total license fee to manufacturer and agent is $52. While the insurance commissioner is required to approve the manufacturer's product, he is not required to be satisfied that the proposed material will protect against lightning but only of the good faith and solvency of the manufacturer. The object is plain to protect from fraud and the dangers which might arise from unrestricted sale of a material which might increase the risk of, instead of preventing damage by lightning. As such protection is within the legislative power, the question is, not whether some provision of the act restricts to some extent private rights, but whether the purpose of the provision is the execution of the protective purpose, and whether, if enacted for such purpose, such provision unreasonably limits private right. Carter v. Craig, 77 N. H. 200. It cannot be urged that the purpose of the restriction was to preserve for residents of this state a monopoly of acting as agents for lightning-rod manufacturers. The language of section 3 in reference to the appointment of agents proves that the draftsman of the act had in mind the provisions of the statute, requiring the agents of foreign insurance companies to be residents of the state, which has been the law of the state since 1889. P. S., c. 169, ss.

7, 8; Laws 1889, *c.* 86, *s.* 2. The respondent as a citizen of Massachusetts does not come here to exercise an ordinary trade or calling, but to act as agent for another, to exercise a sort of office.

"Whenever the Legislature prohibits any calling or profession, it ceases to be a lawful pursuit; and when the Legislature do not prohibit it, but allow it to be exercised by certain persons, having certain qualifications specified in the law, it then becomes a municipal privilege, which may be only exercised by those persons who have the qualifications, and pursue the steps required by the law. It would be strange indeed, that the moment a citizen of another State sets his foot on our soil, he is to be considered as entitled to all the political and municipal privileges enjoyed by our own citizens, without regard to the Constitution and laws of this State. And yet the words of the Federal Constitution are without qualification. If we agree to exclude political privileges from the number of privileges and immunities which the Constitution of the United States declares citizens of other States shall be entitled to, there is the same reason for extending the limitation to municipal privileges. And selling spirituous liquors in quantities less than one quart, is in this State a *privilege* granted only to those having the qualifications pointed out in the act. A residence of two years in the State, is one of the qualifications which the Legislature have thought proper to require in the city of St. Louis; and this qualification, we consider, is no more liable to constitutional objections than a residence, of one year before a citizen from another State is allowed to vote, or a residence of five years before he can be elected to the Legislature." *Austin* v. *State*, 10 Mo. 591, 594. The legislature thought it wise that one desiring to act as the agent of another in the sale of lightning rods should at least take up such a residence here, as would render him amenable to the process of, and bring him within the jurisdiction of the courts of the state. The provision does not so unreasonably affect the defendant's common law right to act as agent of a lightning-rod manufacturer, which he claims is preserved to him by the constitution of the United States, that the court can declare it void. *State* v. *Prince*, 77 N. H. 581. It is said that the business of retailing liquor is one peculiar to itself, which the legislature might wholly prohibit, or as to which it might confine the license to a limited number. *Templar* v. *State Board*, 131 Mich. 254, 258,— 100 Am. St. Rep. 610. But the difference is one of degree, not of principle, and no reason is perceived why the legislature, convinced by scientific investigation or the general sense of the community that lightning

rods were more dangerous than useful, might not wholly prohibit their sale. There can be no natural inalienable right to sell lightning rods any more than there is to sell liquor, consequently there can be no natural right to sell as agent. It is to be conceded that a citizen of another state cannot be taxed a greater sum for a privilege allowed him here than is levied upon the citizens of the state. *State* v. *Wiggin*, 64 N. H. 508; *State* v. *Lancaster*, 63 N. H. 267; *Ward* v. *Maryland*, 12 Wall. 418, 430. It is argued that to deny the privilege of an occupation is a greater discrimination than an inequality of burden. *State* v. *Montgomery*, 94 Me. 192,—80 Am. St. Rep. 386. The inequality of burden, invalid as an exercise of the taxing power, cannot be sustained under the police power because admission to the privilege on some terms concedes the inapplicability of the police power. In *Bliss' Petition*, 63 N. H. 135, the question presented was considered as presenting a question of inequality of taxation. Whether upon any grounds a state could confine the privilege of itinerant salesman to citizens of the county in which they reside was not considered and need not now be discussed. See *Commonwealth* v. *Hana*, 195 Mass. 262, 265.

The conclusion is that the statute does not discriminate against citizens of other states and that if it could be construed to do so, the discrimination is one that the state could lawfully make.

*Judgment for the state.*

All concurred.