Merrimack, }
April 2, 1935. }

D. Lawrence Holmes *v*. Clement A. Schnoebelen *& a.* and *Tr.*

D. Lawrence Holmes *& a. v.* Same.

Charles F. Chase *v*. Clement A. Schnoebelen *& a.*

Hartford Accident and Indemnity Company

*v.*

D: Lawrence Holmes *& a.*

*Robert W. Upton* and *Laurence I. Duncan* (*Mr. Duncan* orally), for
D. Lawrence Holmes *& a.*

*Murchie, Murchie & Blandin* (*Mr. Alexander Murchie* orally), for
Clement F. Schnoebelen *& a.* and Hartford Accident and Indemnity
Company.

MARBLE, J. The holder of the guaranty agreement was not re-
stricted in his choice of remedies to an action for the breach of that
agreement but could sue in tort for the injury caused him by the
negligent installation of the lightning rods. *Hubbard* v. *Gould,* 74
N. H. 25, 28; *Kenney* v. *Len,* 81 N. H. 427, 438. See also *McQuaid* v.
*Michou,* 85 N. H. 299, 300, 301.

The fact that the other plaintiffs in the actions at law were not

parties to the agreement did not preclude their recovery. *Cunningham* v. *Company*, 74 N. H. 435, 436. Having undertaken to protect the building and, by necessary implication, the property of those who occupied it, Schnoebelen and his agents were liable to the occupants in question for the negligent performance of the duty assumed. *Pittsfield &c. Co.* v. *Company*, 71 N. H. 522, 533. The obligation arose "not from the contract, but from the action undertaken."

Neither the petitioner nor the defendants in the actions at law seriously question these conclusions, but direct their argument mainly to the "present objective of the various plaintiffs," which is recovery on the bond. They contend that no one except D. Lawrence Holmes is entitled to sue thereon and that his claim cannot exceed the amount expressed in the guaranty agreement.

Legislation regulating the sale of lightning rods in this state had its inception in chapter 49, of the Laws of 1878. Penalties for sale without license were imposed by the provisions of that act, but no bond was required of the licensee. Chapter 34 of the Laws of 1879 furnished this protection by providing that the applicant for a license must file a bond with the state treasurer in the penal sum of $1,000 "to respond in damages to any person who may be aggrieved by reason of any misrepresentation or fraud in the sale of such lightning-rods or anything relating thereto." The act further provided that any person injured by such fraud or misrepresentation, having recovered judgment thereon against the person obtaining such license, might commence a suit on the bond in the name of the treasurer. This act was later embodied in the Public Statutes, chapter 123, sections 5-8.

"By Laws 1911, c. 112, all special provisions relating to the sale of lightning rods were repealed, with the provision that the sale should be regulated under the statute relating to Hawkers and Pedlers, chapter 76, Laws 1897, and the amendments thereto. Four years later, 1915, the present statute was enacted." *State* v. *Stevens*, 78 N. H. 268, 274. This statute, which originated in House Bill No. 532, is more comprehensive than any earlier statute on the subject. *State* v. *Stevens, supra.*

House Bill No. 532 in its original form required the filing of a bond in the penal sum of $1,000, "to pay all damages occasioned to any person by any misrepresentation, fraud or negligence practiced by the licensee or by any agent of such licensee in the sale or installation" of lightning rods or other material used for the protection of buildings from damage by lightning. Section 8 of the original draft provided that "Any person injured by the misrepresentation, fraud

or negligence" of a licensee or his agent "in the sale or installation of such rods or material, having received judgment therefor, may bring suit in the name of the insurance commissioner upon the bond."

The bill was re-drafted in the senate, and by section 2 of the new draft the amount of the bond was increased to $5,000 and its scope extended to include "the payment of any final judgment that may be recovered" against the manufacturer (applicant for a license) "in any court of competent jurisdiction in this state." It was further provided that "a copy of the guarantee agreement issued by such manufacturer" must be filed with the insurance commissioner and that this agreement "must provide that, in the event of damage by lightning to property rodded by said manufacturer or his agent, money for the rodding of said building shall be returned to the owner thereof, or the damage to said building repaired."

Section 8 of the original draft was succeeded by section 6 of the final draft, which expressly conferred upon the holder of the guaranty agreement the right to bring suit on the bond in the name of the insurance commissioner, with "the same procedure and remedies thereon as in the case of official bonds of county officers."

The bill in final draft was enacted into law as chapter 128 of the Laws of 1915, and now appears without material change as chapter 160 of the Public Laws.

From an examination of the two drafts it is reasonable to conclude that the legislature intended to protect by the required bond all persons injured by the wrongful conduct of the licensee and to give the owner of the rodded building additional protection by way of an express guaranty.

The broadly expressed purpose of the bond to secure the payment of any final judgment that may be recovered against the applicant in any court of competent jurisdiction in the state (P. L., c. 160, s. 2) is a clear indication that the bond is designed to cover a wider liability than that incurred by a mere breach of the guaranty agreement. If it had been the legislative purpose to thus restrict the condition of the bond, the simple statement that the applicant must file a copy of his guaranty agreement together with a bond to secure its performance would have been the natural manner of expressing this limitation.

"The object [of the act] is plain to protect from fraud and the dangers which might arise from unrestricted sale of a material which might increase the risk of, instead of preventing damage by lightning." *State* v. *Stevens*, 78 N. H. 268, 274, 275.

The provision that the holder of the guaranty agreement shall "have the same procedure and remedies" on the bond "as in the case of official bonds of county officers" further indicates the broad coverage of the bond in question.

Official bonds are for the benefit of any person who may be injured by the neglect or misconduct of the officers giving them, and a person so injured, having recovered judgment for his injury against an officer, may commence a suit on the officer's bond in the name of the county. If he recovers on the bond, judgment is rendered in favor of the county for the whole penalty of the bond, but execution issues only in favor of the person for whose use the suit is brought and only to the extent of his damages. "After judgment so rendered for the whole penalty any person having like cause of action upon such bond may, on *scire facias*, recover execution for his damages until the whole amount of the penalty is applied on account of damages so recovered." P. L., *c.* 37, *s.* 14.

To be sure, P. L., *c.* 160, *s.* 9 applies in terms only to the holder of the guaranty agreement. Others who may recover on the bond were apparently omitted by oversight. This omission, however, is not a bar against any relief for them, and a right being given, any appropriate procedure to enforce it is available. The procedure prescribed for guaranteed parties may be conveniently used by others and does not require express statutory authorization.

We therefore conclude that the various plaintiffs in the actions at law are entitled to maintain suits on the bond and that the petitioner cannot discharge its obligation by refunding the money paid Schnoebelen but must satisfy, to the extent of the penal sum of the bond, the judgments rendered in the various actions.

This conclusion makes it unnecessary to consider the contention that the petitioner, having assumed the defence of the actions at law, is estopped from denying liability.

The orders are

> *Petition of Hartford Accident and Indemnity Company,*
> *case discharged; exceptions overruled in the other cases.*

All concurred.