328 P.2d 589

The TOWN OF FARMINGTON, New Mexico, Plaintiff-Appellee,

v.

Marlo MILLER, Defendant-Appellant.

No. 6389.

Supreme Court of New Mexico.

July 18, 1958.

Rehearing Denied Aug. 25, 1958.

Hannett, Hannett & Cornish, Albuquerque, for appellant.

James B. Cooney, Jack M. Morgan, Kendall O. Schlenker, Farmington, for appellee.

LUJAN, Chief Justice.

Appellant, an itinerant salesman, was arrested in the Town of Farmington and charged with a violation of Farmington Ordinance 158 which levies an occupation tax in the amount of one dollar per thousand for each one thousand dollars gross volume of business done, with a minimum tax of five dollars per annum. The tax is levied upon "all occupations, professions, trades, pursuits, or corporations and other institutions and establishments, utilities and businesses of whatever name or character."

Appellant was tried in the police magistrate court, found guilty and fined fifty dollars and sentenced to ten days in jail with the jail sentence suspended.

Appellant appealed to district court, the case was tried *de novo,* and he was again found guilty of violating Farmington Ordinance 158. The court fined him ten dollars and suspended the fine.

Appellant is a resident of California engaged in the business of soliciting orders for tailor-made clothes. On occasion, a part of the purchase price is paid to appellant at the time he secures the order. The garments are tailored in either Utah or Hong Kong, China, and the ones tailored in China are shipped to appellant in California. From California the goods are shipped to the customer C.O.D., usually by parcel post. Appellant has no option to return the garments.

Appellant made application to the Town of Farmington for an occupation license. He was subsequently advised that the Board of Trustees for the Town disapproved his application. He proceeded to solicit orders without an occupation license and was arrested tried and convicted therefor.

Appellant first contends that he was prosecuted under Farmington Ordinance 120 rather than under 158. The trial court found that the prosecution was for violation of Ordinance 158 and this finding is more than amply supported by the record. The criminal complaint, the warrant, and the transcript from the police magistrate court all show that appellant was arrested and tried for violation of Farmington Ordinance 158.

Appellant obliquely challenges the right of the Town of Farmington and its officials to refuse issuing him an occupation license. Even if appellant was wrongfully refused a license, and we do not so hold, it is no defense to the prosecution involved in this case. The general rule is that the wrongful refusal of a license is not a defense to a prosecution for acting without a license. State v. Stevens, 78 N.H. 268, 99 A. 723, L.R.A.1917C, 528; Phoenix Carpet Co. v. State, 118 Ala. 143, 22 So. 627; Roberts v. State, 26 Fla. 360, 7 So. 861; 30 A.L.R.2d 1006; see Poulos v. State, 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105.

Appellant contends that the trial court erred in refusing to permit him "to show that there was misconduct on the part of the city officials including Stinnett to intimidate the appellant and exclude him from engaging in his interstate business in the City of Farmington." Just what "misconduct" appellant has in mind we have no way of knowing. Under this point appellant has one sentence which reads as follows, "The Hewit case cited under Assignments of Error Nos. I and II fully supports this assignment of error."

Speculating on what appellant refers to (as we must since no facts are set forth, no citation is made to the record and Freeman v. Hewit, 329 U.S. 249, 67 S.Ct.

274, 91 L.Ed. 265, does not seem to be in point in any respect), we assume he is referring to the ruling of the court, upon objection by counsel for the Town of Farmington, when he was asked the following question:

"Q. Had you been arrested before for the same offense, for selling here?"

After offer of proof by counsel for appellant, the trial judge stated as follows:

"The court would make this observation: a charge under Ordinance 199 might have been invalid by reason of interference with interstate commerce, a charge under Ordinance 158 might or might not be, and that is the question before the Court today, not whether this man has been charged, found guilty or not guilty or anything else with respect to prior offenses, and the offer will be refused."

The Court's ruling was not error. The evidence was offered to prove a proposition which was not in issue nor probative of a matter in issue and thus was immaterial. McCormick, Handbook of the Law of Evidence § 152 (1954).

We come now to the crucial question in this case, namely, whether Farmington Ordinance 158, as applied to appellant, violates the commerce clause of the Constitution.

■■ We agree with appellant that he must be catagorized as a drummer rather than a peddler even though he solicits orders for goods which, in effect, he already owns. While it has been suggested that an itinerant salesman is a drummer only when sales are subject to validation by the home office, the decisive factor appears to be the actual interstate transportation of the goods after their sale within the state. Harding, Corporations Doing Business in Other States (1926); Note, Taxation of Itinerant Salesman, 40 Yale L.J. 1094 (1930). Neither the law of sales nor ownership of the goods is the controlling criterion. Stewart v. People of State of Michigan, 232 U.S. 665, 34 S.Ct. 476, 58 L.Ed. 786; Rearick v. Commonwealth of Pennsylvania, 203 U.S. 507, 27 S.Ct. 159, 51 L.Ed. 295. However, the fact that we classify appellant as a drummer does not dispose of the controversy. It is the opinion of this court that Farmington Ordinance 158 is constitutional as applied to appellant even though he is so classified.

The fountain-head of the drummer cases is Robbins v. Shelby County Taxing District, 120 U.S. 489, 7 S.Ct. 592, 30 L.Ed. 694. In that case the Court refused, on commerce clause grounds, to allow taxing authorities to exact a license tax from a salesman not having a regularly licensed place of business in the taxing district, as a condition precedent to soliciting trade within the taxing unit.

This holding was extended in a series of cases in which it was held to apply

whether the solicitation of orders was or was not made with samples, and to sales which were not consummated until actual delivery of the goods, which was attended by local incidents. Corson v. State of Maryland, 120 U.S. 502, 7 S.Ct. 655, 30 L. Ed. 699; Asher v. State of Texas, 128 U.S. 129, 9 S.Ct. 1, 32 L.Ed. 368; Caldwell v. State of North Carolina, 187 U.S. 622, 23 S.Ct. 229, 47 L.Ed. 336; Norfolk & W. R. Co. v. Sims, 191 U.S. 441, 24 S.Ct. 151, 48 L.Ed. 254. Nor did it matter that the solicitor received his compensation in the form of down payment by the purchaser. Real Silk Hosiery Mills v. City of Portland, 268 U.S. 325, 45 S.Ct. 525, 69 L.Ed. 982.

The reason for the decision in the Robbins case is clear when it is remembered that the legislative trend at that time, and for many years thereafter, was to protect local merchants from itinerant solicitors by levying a license tax on the latter. This type of tax was seldom imposed upon local merchants with established places of business. Such taxes as were imposed on local merchants were usually proportionate in amount to the volume of their business rather than the fixed sum license tax imposed on drummers. Lockhart, The Sales Tax in Interstate Commerce, 52 Harv.L. Rev. 617 (1939). It has been stated that during the 1923–1926 period over 700 municipal ordinances directed against house to house solicitation of orders were adopted, admittedly for the purpose of holding down competition with local merchants. Hemphill, The House To House Canvasser in Interstate Commerce, 60 Am.L.Rev. 641 (1926).

These practical considerations, which presumably motivated the Robbins decision and those which followed in its wake, are in large measure absent in this case. And the particular facts in each case must control the decision. Freeman v. Hewit, supra.

The tax imposed by Farmington Ordinance 158 is not directed *against* the business of soliciting orders for goods to be shipped in interstate commerce. Nor is it imposed *on* the business of soliciting orders as such. See McGoldrick v. Berwind-White Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565. The tax is levied on "all occupations, professions, trades, pursuits, or corporations and other institutions and establishments, utilities and businesses of whatever name or character like or unlike and not enumerated in or provided for under § 14–3808." § 14–42–7, 1953 Comp.

Basically, it is the discriminatory features of license taxes on solicitors that calls for their constitutional invalidity. Hartman, State Taxation of Interstate Commerce p. 112 (1953); see Memphis Steam Laundry Cleaner v. Stone, 342 U.S. 389, 72 S.Ct. 424, 96 L.Ed. 436. Under the tax here in question appellant competes on an equal basis with local merchants. The tax impinges equally on all; it seeks to enforce

equality in the market place and it is not excessive.

The record demonstrates that appellant carried on his activities as a single proprietorship; that he buys goods at wholesale; that such goods are shipped to him in California; that he has no option to return the goods; and that it is his property from the time the firm he deals with manufactures the garments. Thus the tax in question will not discourage appellant from buying goods interstate. Nor will it discourage prospective customers from dealing with him since a like tax is imposed on local merchants. See Caskey Baking Co. v. Commonwealth of Virginia, 313 U.S. 117, 61 S.Ct. 881, 85 L.Ed. 1223.

Appellant relies most heavily on the case of Nippert v. City of Richmond, 327 U.S. 416, 66 S.Ct. 586, 90 L.Ed. 760, in which the court refused to overrule Robbins v. Shelby County Taxing District, supra, in the light of what attorneys for the City said were recent trends requiring that outcome. However, the court did not hold, as it had in the Robbins case, that "Interstate Commerce cannot be taxed at all." Quite the contrary. At page 425 of 327 U.S., at page 590 of 66 S.Ct., the Court stated as follows:

"As has been so often stated but nevertheless seems to require constant repetition, not all burdens upon commerce, but only undue and discriminatory ones, are forbidden." Western Livestock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823.

Again at page 433 of 327 U.S., at page 594 of 66 S.Ct., the Court stated:

"There is no lack of power in the State or its municipalities to see that interstate commerce bears with local trade its fair share of the cost of local government, more especially in view of recent trends in this field. McGoldrick v. Berwind-White Co., supra."

The court in the Nippert case did hold the municipal ordinance invalid, and appellant argues that the case is on all fours with the one at hand. But the cases are distinguishable in at least three important respects.

First, the tax imposed by the municipal ordinance which the court in the Nippert case had before it was levied on "Agents-Solicitors-Persons, Firms or Corporations *engaged in business as solicitors* * * *". (Emphasis added.) The tax in the instant case is levied on "all occupations, professions, trades and pursuits." All persons engaged in occupations, trades, etc., must pay the tax, not just local and out-of-state solicitors.

Second, as recognized in the Nippert case, the court in McGoldrick v. Berwind-White Co., supra [309 U.S. 33, 60. S.Ct. 398], narrowed the rule of the Robbins case "*to fixed-sum license taxes* imposed on the

business of soliciting orders for the purchase of goods to be shipped interstate." (Emphasis added.) West Point Wholesale Grocery Co. v. City of Opelika, Alabama, 354 U.S. 390, 77 S.Ct. 1096, 1 L.Ed. 2d 1420. The Farmington tax is not solely a fixed sum license tax. Rather it is a hybrid fixed sum—gross receipts tax. The court in the Nippert case was not dealing with this type of tax. At page 422, of 327 U.S., at page 589 of 66 S.Ct., note 6, the Court stated:

"Whether or not the 'fixed sum' reference would apply to a tax measured in part by gross receipts (cf. the language of the ordinance in this case relating to earnings, etc., in excess of $1000), the tax applied here presumably would not involve that feature, since by the explicit wording it applies only to earnings, etc., 'for the preceding license year' and there is no showing relating to such earnings in this case."

■ Third, the court in the Nippert case, indistinguishing International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, laid some emphasis upon the fact that there was no showing that the defendant had ever solicited orders in Richmond other than during the five days in question. The court also noted that there was no evidence as to whether defendant intended to return later, and if so, whether regularly and indefinitely or only occasionally and spasmodically. Apparently this distinction was pointed out to show that while technically one may be a drummer even though he solicits in the same area regularly, he is, in effect, engaging in local business and should bear a fair share of the cost of local government. Appellant solicited orders in the Town of Farmington for six weeks in 1955 and for nearly eight weeks in 1956. It is a reasonable presumption on the facts before us that appellant intends to solicit in the Town of Farmington for some six weeks or two months each year. Solicitation over such protracted periods can hardly be considered "spasmodic". The typical drummer is highly mobile, reaping profit by moving rapidly from one market area to another. See note, State Taxation and Interstate Commerce, 54 Col.L.Rev. 261 (1954). Lockhart, The Sales Tax in Interstate Commerce, 52 Harv. L.Rev. 617 (1939).

We have taken into consideration the fact that we are dealing with a municipal ordinance rather than a state statute, and that accordingly the possibility of multiple taxation is increased. But we are dealing with an actual case, not a suppositious one.

We are satisfied that Farmington Ordinance 158 is constitutional as applied to appellant notwithstanding the recent Tenth Circuit decision to the contrary (by a divided court) in the case of Miller v. Stinnett, 257 F.2d 910.

To grant immunity to appellant from the tax in question would be to grant a pref-

erence to interstate commerce, a result which this court does not believe the Constitution was ever intended to produce. See Hartman, State Taxation of Interstate Commerce p. 121 (1953).

The judgment must be affirmed.

It is so ordered.

SADLER, McGHEE, COMPTON and SHILLINGLAW, JJ., concur.