Hillsborough,
No. 5070.

JAMES P. BOURNE & a. v. JAMES B. SULLIVAN & a.

Argued November 7, 1962.

Decided December 28, 1962.

*J. Francis Roche,* city solicitor (by brief and orally), for the plaintiff city treasurer.

*Peter J. Bourque* (by brief and orally), for the defendant Finance Commissioners.

*Sheehan, Phinney, Bass, Green & Bergevin (Mr. Gerard O. Bergevin* orally), for the defendant Albert Poisson.

The plaintiff creditors furnished no briefs.

DUNCAN, J.   The Manchester Finance Commission was established in 1921 by legislative act (Laws 1921, *c.* 226), the constitutionality of which was determined in *Amyot* v. *Caron,* 88 N. H. 394. See also, *Attorney General* v. *Bond,* 81 N. H. 269.   Section 6 of the statute charges the Commission with "general supervision and control over the expenditure of all money appropriated by [the] city."   It authorizes the Commission to make "such rules and regulations to govern purchases, sales, payments, fixing of salaries and wages, the letting of contracts by all city departments . . . officials or agents as they may deem necessary to insure economy and efficiency."   The Commission is also invested with investigatory powers for the purpose of reporting its findings to the board of mayor and aldermen "as a basis for such laws, ordinances or administrative orders" as the mayor and board might deem necessary. *Ss.* 3, 4.

In *Kearns* v. *Nute,* 94 N. H. 217, 220, the provision for "general supervision" was considered to give the Commission power to cause the laws of the city to be executed and to set on foot appropriate proceedings if violations were discovered.   Its authority to issue regulations and to "control" expenditure of appropriated funds is not questioned in this action. *Poisson* v. *Manchester,* 101 N. H. 72.   See also, Laws 1949, 411:1; Laws 1957, 434:1.

It is not disputed that the checks upon which payment was stopped by direction of a majority of the commission were issued "to either city officials or to firms or corporations in which said city officials have an interest" in payment of obligations incurred without public notice or competitive bidding, with the exception of one account which has since been paid.

Section 34 of chapter 8 of the Manchester ordinances, adopted in 1925, provides as follows: "It shall be unlawful for any com-

mission, board of trustees, aldermanic committee or other official of the city of Manchester having the custody or expenditure of any monies appropriated by the city to enter into any contract with or purchase any article or service from any member of any commission, board of trustees, alderman or other city official of the city of Manchester unless the same be done by competitive bidding after due public notice."

In 1941 the Legislature adopted "an act to prevent public officials from buying property from themselves for the city, county or state," which now appears in RSA ch. 95 (Laws 1941, c. 85). The act, which carries a maximum penalty of a five-thousand-dollar fine and compulsory removal from office, provides as follows: "PUBLIC OFFICIALS BARRED FROM CERTAIN PRIVATE DEALINGS. No person holding a public office, excepting only members of the general court, as such, for which remuneration in the form of wages, salary, or per diem is paid, in city, county, or state governmental service shall, by contract or otherwise, except by open competitive bidding, sell or buy goods, commodities, or other personal property of a value in excess of twenty-five dollars at any one sale to or from the city, county, or state by which said official is paid." RSA 95:1.

In 1950, pursuant to Laws 1921, c. 226, s. 6, the Finance Commission adopted a regulation which provided that the Commission would neither authorize nor consider valid "payments for contracts of any kind, leases, sales and purchases of property or other expenditures in excess of $300 unless the requirements with respect to competitive bidding have been observed." It had previously issued a regulation requiring that "unless the competitive bidding procedure is waived" by the Commission, solicitation of bids should be published in a newspaper when materials or services of a value in excess of $300 were sought.

Although one purpose of the pending action is to adjudicate the validity of the Manchester ordinance, supra, the parties also seek a determination under the provisions set forth above, of the status of the creditors involved, and in particular of the status of "firms or corporations" in which city officials have an interest.

The various enactments brought to our attention by these proceedings illustrate the difficulties commonly encountered in the field of regulation of conflict of interest. The problem is difficult of satisfactory legislative solution; and the standards which are imposed by statute or regulation need to be understandable

not only to enforcing authorities, but also to officials whose conduct is to be governed by them. Note, Conflict of Interests: State Government Employees, 47 Va. L. Rev. 1034, 1060, 1076 (1961).

The case requires some preliminary analysis of the several enactments before us, viewed in perspective. The regulations of the Finance Commission based on Laws 1921, c. 226, *supra*, to achieve "economy and efficiency" (s. 6) are of general application, requiring open competitive bidding upon all transactions obligating the city where the amount involved exceeds $300, regardless of whether the party dealing with the city is or is not an official thereof or related in some way to such an official.

The city ordinance adopted in 1925, would require competitive bidding regardless of the amount involved, but is sharply limited to transactions between officials of the city, where one of them has "the custody or expenditure" of appropriated funds.

The statute of 1941 (RSA ch. 95), if literally interpreted, is sufficiently broad on its face to require competitive bidding in any transaction by any compensated city official which involves a value of more than $25. If this was the purpose of the Legislature, then the provisions of the 1925 ordinance would clearly be invalidated because inconsistent with this statutory requirement. *State* v. *Paille,* 90 N. H. 347. We do not consider however that the application of the statute was intended to be as broad as a literal reading of its operative provisions might indicate. *Opinion of the Justices,* 75 N. H. 613, 615.

While the title of the original act (Laws 1941, c. 85, *supra*) referring to "officials . . . buying . . . from themselves for the city" has been discarded in compilation of the statutes, RSA ch. 95 is entitled: "PERSONAL INTEREST IN BUSINESS TRANSACTIONS WITH PUBLIC"; and the section which forbids transactions without competitive bidding retains its original title: "PUBLIC OFFICIALS BARRED FROM CERTAIN PRIVATE DEALINGS." (Emphasis supplied). The statute is a criminal statute, carrying severe penalties for violation, including loss of office. RSA 95:2. See *Catalfo* v. *Cotton,* 104 N. H. 290. It is not to be extended beyond its fair import and alleged violators are entitled to the benefit of any substantial uncertainties in meaning. *State* v. *Williams,* 92 N. H. 377, 379. While the title of the act and of section 1 are not conclusive of its interpretation (*Vera &c. Co.* v. *State,* 78 N. H. 473, 475), they are significant when considered in connection with the legislative history of the act, and ambiguities

inherent in its language. See *State* v. *Faro*, 118 Conn. 267; *Brown* v. *Robinson*, 275 Mass. 55; 2 Sutherland, Statutory Construction (3d *ed.*) *s.* 4802.

The act originated as a bill to prohibit, without exception, all sales in excess of $25 in a year by any officer drawing compensation from the city. H. B. 143 (1941 Session). The bill was revised in new draft, and thereafter subjected to several amendments, so that it was applicable to both sales and purchases, "any one" of which should exceed $25, and to persons holding public office except members of the General Court "as such," unless there was "open competitive bidding." House Journal, March 19, 1941, *pp.* 442-444, 447. We are therefore of the opinion that RSA 95:1 was intended to prohibit compensated officials of a city acting as such from dealing with themselves as individuals except upon open bid, where more than $25 is involved in the particular transaction.

In the light of the foregoing discussion, the regulations adopted by the Finance Commission are necessarily inconsistent with the provisions of RSA 95:1 only to the extent of the limited field to which RSA ch. 95 applies. The statute requires competitive bidding as to a transaction involving more than $25 between a compensated city official, acting in his official capacity, and the same official, acting in his private and individual capacity. The regulations of the Finance Commission may still apply to transactions not in this category so as to require competitive bidding in all other cases in which the consideration exceeds $300 in value.

The statute is not intended to regulate the entire field of municipal transactions by comprehensive standards. *Pollard* v. *Gregg*, 77 N. H. 190. *Cf. State* v. *Angelo*, 71 N. H. 224; *State* v. *Jenkins*, 102 N. H. 545. Except as the requirements of the Finance Commission conflict with the statute in its limited field, they are valid regulations "adapted to meet the governmental requirements of a locality." *Amyot* v. *Caron*, 88 N. H. 394, *supra*, 401. As such they may operate independently of RSA 95:1 in fields where there is no conflict; and in the field of "self-dealing," RSA 95:1 will control.

The question is presented whether RSA 95:1 applies to transactions between city officials and "firms or corporations" in which they have an interest. Unlike many enactments found elsewhere, the statute does not purport to prohibit participation

by an official whether his private or personal interest is "direct or indirect" (see *Opinion of the Justices*, 108 Me. 545; Annot. 140 A.L.R. 344) nor does it expressly prohibit dealings with partnerships or corporations in which the official may have an interest. "Public Officers" s. 328, 43 Am. Jur. 128.

House Bill 143 in original draft would have prohibited sales to a city by any "corporation, association or partnership" in which a city official was an "officer, director or owner of ten per cent of its stock." H. B. 143, section 5. No such provision was carried into the bill in new draft, or the statute as enacted. The implication is that the Legislature did not intend that the prohibition should extend this far. Such a "firm or corporation" would not be a "person holding a public office" within the statutory prohibition. RSA 95:1. In consequence, we are of the opinion that as enacted the statute applies to transactions between a city official and a "firm or corporation" in which he is interested only in cases where the official has such direct personal and pecuniary interest in its transactions as to warrant the conclusion that his official judgment may be influenced thereby. *Opinion of the Justices*, 75 N. H. 613; *Opinion of the Justices*, 104 N. H. 261.

The city ordinance of 1925 purports to require competitive bidding, regardless of the amount involved, where a city official having "the custody or expenditure" of appropriated moneys is a party to the transaction. Such an official might or might not be a compensated official so as to come within the provisions of RSA 95:1. The probability of conflict with the statutory prohibition is apparent. Presumably since the Legislature circumscribed the type of officeholder to which the statute should apply, it did not intend municipalities to regulate a different or broader class of officers for the same purpose. Also it may fairly be assumed that it considered that competitive bidding should not be required in transactions involving less than $25. From the standpoint of the city, it is improbable that the ordinance would have been enacted, had it appeared that it could be effective only as to minor transactions. See *Opinion of the Justices*, 103 N. H. 402, 414, 415. We hold that the ordinance of the city was invalidated by the enactment in 1941 of the provisions now contained in RSA 95:1.

In so doing, we do not imply that because of RSA 95:1 an ordinance in different form might not validly be enacted. Thus an ordinance substantially like the regulations promulgated by

the Finance Commission in 1950 would not conflict with RSA ch. 95. As previously stated, this statute has not pre-empted the entire field of regulation of the commercial transactions of municipal officers.

The net result is that transactions involving amounts between $25 and $300 are required to be by competitive bid under RSA 95:1 if between a compensated city official, acting as such, and the same official acting privately; or if between such an official and a firm or corporation in which he has a substantial and direct pecuniary interest. Other transactions involving $300 or less are unaffected either by statute or regulation. All transactions involving sums in excess of $300 are required by the regulations of the Finance Commission to be by competitive bid, regardless of the status of the contracting individuals, if the city is a party. Applying these principles to the transferred questions the following rulings are made:

The first question is moot, although it is conceded by the plaintiff that an ordinance requiring competitive bidding is valid in the absence of statutory regulation of the subject.

Since the Manchester ordinance is invalid, the fourth question is answered in the affirmative, and the second, third and fifth questions require no answer.

In answer to the sixth question, we hold that the defendant members of the Manchester Finance Commission were justified in stopping payment of any checks given in payment for or on account of transactions of more than $300 as to which competitive bidding was not waived by the Finance Commission, and of any checks on account of transactions of more than $25 not upon competitive bid which were between compensated officials and themselves, or firms or corporations in which they had a disqualifying interest as hereinbefore defined.

In answer to the seventh question, we hold that all persons holding city office for which remuneration is paid, and all firms and corporations in which such an official has a disqualifying interest as hereinbefore defined, are bound by the requirements of RSA 95:1. Whether such persons, firms or corporations would be subject to criminal liability under RSA 95:2 is a question not presented.

*Remanded.*

All concurred.