Rockingham
No. 79-274
No. 79-275
No. 79-464

TOWN OF NOTTINGHAM

v.

DANIEL HARVEY *& a.*

TOWN OF NOTTINGHAM

v.

LEE HOMES, INC. *& a.*

December 29, 1980

890

*Sulloway, Hollis & Soden,* of Concord (*Peter F. Imse* orally), for the plaintiff (Town of Nottingham, 79-274).

*Shute, Engel & Frasier*, of Exeter (*David C. Engel* orally), for the plaintiff (Town of Nottingham, 79-275, 79-464).

*Barrett & McNeill*, of Durham (*John T. Barrett* orally), for the defendants.

PER CURIAM. The validity of the Town of Nottingham zoning ordinance and subdivision regulations is the issue presented by the defendant Harvey's appeal. The town alleges that Harvey has violated both the zoning ordinance and the subdivision regulations by conveying subdivided lots of his property to his children. The Superior Court (*Randall*, J.) found that the town had validly adopted the ordinance and subdivision regulations and declared the conveyances void.

The town cross appeals the court's refusal to assess civil penalties and to award costs and attorney's fees. It argues that both actions are mandated by RSA 36:27, the ordinance, and Section VII(c) of the subdivision regulations.

On March 8, 1960, the Town of Nottingham enacted a zoning ordinance which established three zoning districts: General Residence and Agricultural District; Lake Residence District; and Recreational Camp District. In 1972 the town amended the ordinance to increase the minimum lot size within the General Residence and Agricultural District from one to two acres. That same year, in an unrelated proceeding, the superior court declared the town subdivision regulations invalid because they did not conform to the State enabling legislation. Shortly thereafter, the chairman of the town planning board signed four plans showing over 300 acres of Harvey-owned land which were located in the residential/agricultural district. Excluding swamp land and streets, the lots laid out on the plans were each less than two acres. The chairman testified that he had advised Mr. Harvey of this irregularity and that he had signed the plans, on advice of town counsel, only to show the outer perimeter of the land. At this time Harvey did not submit the plans for approval to the planning board, which did not then have the authority to approve subdivisions. The following year (1973), the planning board enacted subdivision regulations for the town.

In February of 1974, Harvey conveyed in five deeds 129 lots to five of his children. In December of 1975 the town, alleging that the conveyances violated the town zoning ordinance and subdivision regulations, filed a petition for declaratory judgment and other relief against Harvey and his children. Specifically, the town sought to void the conveyances and to have the court award costs

and attorney's fees in addition to statutory civil penalties. Prior to a hearing on the merits, the town adopted a master plan for community development.

After a hearing the court held that the town had substantially complied with the enabling statute in effect in 1960 and that the zoning ordinance was legal. Additionally, it found that the town had validly adopted amendments to the zoning ordinance in 1972. Consequently, because the conveyances were void for failing to comply with a valid zoning ordinance, the judge ordered that the children reconvey the lots to their father, denying, however, the request of the town for costs and attorney's fees. Mr. Harvey alleges that the Town of Nottingham did not adopt the 1960 zoning ordinance and the 1972 amendment to that ordinance in substantial compliance with the enabling legislation. R.L. 51:53 (1949); RSA 31:63 (1963) (current version at RSA 31:63 (Supp. 1979)).

When a municipal ordinance is challenged, there is a presumption that the ordinance is valid and, consequently, not lightly to be overturned. *Rochester v. Barcomb*, 103 N.H. 247, 253, 169 A.2d 281, 285 (1961). *See Carbonneau v. Town of Exeter*, 119 N.H. 259, 265, 401 A.2d 675, 678 (1979); *Surry v. Starkey*, 115 N.H. 31, 33, 332 A.2d 172, 174 (1975); *Bosse v. Portsmouth*, 107 N.H. 523, 530, 226 A.2d 99, 105 (1967); *Rockingham Hotel Co. v. North Hampton*, 101 N.H. 441, 444, 146 A.2d 253, 255 (1958); 6 E. MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 22.34 (3d ed. rev. 1980). The party attacking the validity of a town zoning ordinance or subdivision regulation has the burden of proving the invalidity of the ordinance or regulation. *Rye Dev. Co. v. Town of Greenland*, 116 N.H. 520, 521, 363 A.2d 427, 428 (1976); *Bosse v. Portsmouth, supra* at 530, 226 A.2d at 105; *Rockingham Hotel Co. v. North Hampton, supra* at 444, 146 A.2d at 255; RSA 31:78 (Supp. 1979). *See generally Developments in the Law—Zoning*, 91 HARV. L. REV. 1427, 1546–47 (1978). We have also held that minor deviations from the procedure set forth in the enabling legislation will not invalidate an ordinance if there was "substantial compliance" with the legislation. *Bourgeois v. Town of Bedford*, 120 N.H. 145, 148, 412 A.2d 1021, 1023 (1980); *Barcomb v. Herman*, 116 N.H. 318, 320, 358 A.2d 400, 402 (1976); *Gutoski v. Winchester*, 114 N.H. 414, 416, 322 A.2d 4, 6 (1974); *McKinney v. Riley*, 105 N.H. 249, 252, 197 A.2d 218, 221 (1964).

In the instant case the defendant first attacks the validity of the 1960 ordinance, alleging that the town had not properly posted the warrant for the March 8, 1960, town meeting. Although there is a presumption in the absence of evidence to the contrary that

posting of a warrant did occur, *McKinney v. Riley, supra* at 252, 197 A.2d at 221, the town introduced direct testimony at trial that the warrant was posted. Additionally, the town supported its claim that it had adopted a zoning ordinance on March 8, 1960, by introducing Article 11 of the warrant of the March 8, 1960, town meeting, which the town clerk had recorded in the "Clerk's Book," and the Annual Town Report for the year ending December 31, 1959, which included the text of the proposed zoning ordinance. The record does not contain any evidence to rebut either the presumption or the testimony put forth by the town.

The defendant specifically challenges the validity of the town zoning ordinance because of the lack of a zoning map. He argues that, absent a map, it is impossible for him to tell in which zone his property is located.

Although the enabling legislation called for regulations, restrictions, and boundaries in town zoning, it did not require the presence of a zoning map to define such regulations, restrictions or boundaries. R.L. 51:53 (1949); RSA 31:63 (1963) (current version at RSA 31:63 (1979)). The Town of Nottingham Annual Report for the year ending December 31, 1959, included the text of the zoning ordinance which the town eventually adopted on March 8, 1960. The ordinance described the three districts which were marked on the original zoning map. The ordinance circumscribed the area included in the Lake Residence District by stating that the district "shall be considered as extending 1,000 feet in depth landward from the usual waterline." Accordingly, all other land within the town would fall within either the General Residence and Agricultural District or the Receational Camp District.

Although the boundaries of the camp district and the general residence and agricultural district cannot be determined without evidence, any difference in lot size requirement is not material because less than two acre lots are not permitted in the general residence and agricultural district.

The defendant also challenges the validity of the 1972 amendment to the 1960 zoning ordinance on the ground that the required notices of the public meeting published by the planning board in a newspaper of general circulation according to RSA 31:63-a (1967) (current version at RSA 31:63-a (Supp. 1979)) did not textually, or by reference to an identifiable map, define the boundaries of the General Residence and Agricultural District. In *Schadlick v. Concord,* 108 N.H. 319, 322, 234 A.2d 523, 526 (1967), we held that a municipality must provide its citizens with reasonable notice that their interests will be affected by the

proposed adoption or amendment of a municipal zoning ordinance. In its decree the trial court found that, after holding four public hearings on the matter, the town had legally adopted the amendments to the 1960 ordinance on November 7, 1972. Because of our conclusion regarding the substantial compliance of the town in enacting the 1960 ordinance, albeit an ordinance whose zoning districts are defined by textual description rather than by a map, and because the record supports the conclusion of the court, we uphold the finding that the town validly enacted amendments to its zoning ordinance in 1972.

Harvey contends that the town did not validly adopt subdivision regulations on January 12, 1973, because the planning board had failed to provide adequate prior notice of the public hearing under RSA 36:23 (1969) (current version at RSA 36:23 (Supp. 1979)) and RSA 91-A:2 (1971) (current version at RSA 91-A:2 (Supp. 1979)). In an unrelated proceeding in November of 1972 the superior court dismissed a petition against Harvey, ruling that the Town of Nottingham did not introduce evidence that the town had delegated the authority to regulate subdivisions to the planning board. On December 9, 1972, the town held a special meeting to delegate subdivision approval authority to the planning board. Shortly thereafter, notice was published in a newspaper of general circulation that the planning board would consider the adoption of subdivision regulations on January 5, 1973. After discussing only one-half of the proposed regulations at the January 5 meeting, the hearing was recessed until January 12, 1973. No further notice of the January 12, 1973, hearing was published. The planning board met on January 12 and approved all of the proposed subdivision regulations. The regulations pertinent to this dispute stated that the dimensions of lots within the town had to conform to the requirements of the zoning ordinance.

■ Harvey asserts that the recess of the hearing from January 5 to January 12 without posting of additional notice was violative of RSA ch. 91-A. Cognizant that RSA ch. 91-A, the "right to know law," is designed "to permit freedom of access to public records and proceedings," *Hardiman v. Dover*, 111 N.H. 377, 380, 284 A.2d 905, 907 (1971), *quoting Herron v. Northwood*, 111 N.H. 324, 326, 282 A.2d 661, 663 (1971), we conclude that the recess of the hearing did not adversely affect the rights of the defendant. Furthermore, the January 12 hearing was merely a continuation of the January 5 meeting. Accordingly, we find no violation of RSA 36:23 and RSA 91-A:2 and uphold the fact-finder's determination

that the town validly adopted subdivision regulations on January 12, 1973.

The defendant further alleges the invalidity of the subdivision regulations on the ground that the town did not adopt a master plan prior to enacting the subdivision regulations. In *Kostreles v. Portsmouth*, this court stated that "[i]n the absence of special grants of authority (RSA 36:16, :19, :26) the general function of a planning board is to prepare a master plan for the development of a municipality, and to investigate, advise, and recommend with respect to municipal planning. RSA 36:10–:15." 104 N.H. 392, 397, 187 A.2d 789, 793 (1963); *see Beck v. Town of Raymond*, 118 N.H. 793, 801, 394 A.2d 847, 852 (1978). Although the town lacked a master plan until 1977, the uniform application of the subdivision regulations throughout the town, and the conformity of the subdivision regulations with the zoning ordinance, constituted a comprehensive system for the administration of the regulations. *See Gutoski v. Winchester*, 114 N.H. at 416, 322 A.2d at 6; *cf. Edgewood Civic Club v. Blaisdell*, 95 N.H. 244, 246, 61 A.2d 517, 518 (1948).

The plaintiff asserts that the court's finding of violations of the zoning ordinance and subdivision regulations required the assessment of monetary civil penalties as set forth in the ordinance and regulations. During the time of the conveyances, Article XI of the zoning ordinance was in effect and provided that: "Every person . . . violating any of the provisions of this ordinance shall be fined not more than Ten Dollars ($10.00) upon conviction for each day such violation may exist." Similarly, Section VII(c) of the subdivision regulations parrots the wording of the enabling statute, RSA 36:27, which provides that:

> "Any owner . . . who transfers or sells any land, before a plat of the said subdivision has been approved by the planning board . . . *shall* forfeit and pay a penalty of five hundred dollars for each lot or parcel so transferred or sold . . . . *Said municipality . . . may* recover the said penalty by civil action. In any such action the prevailing party *may* recover reasonable court costs and attorneys fees as same *may* be ordered by the court." (Emphasis added.)

The general rule of statutory construction, subject to exception, is that the word "may" makes enforcement of a statute permissive and that the word "shall" requires mandatory enforcement. *Silva*

*v. Botsch*, 120 N.H. 600, 601, 420 A.2d 301, 302 (1980); *In re Russell C.*, 120 N.H. 260, 264, 414 A.2d 934, 936 (1980); *North Hampton &c. Ass'n v. Commission*, 94 N.H. 156, 159, 48 A.2d 472, 474–75 (1946). *See generally* 1A C. SANDS, SUTHERLAND STATUTORY CONSTRUCTION §§ 25.03–04 (3d ed. rev. 1972). Ultimately the distinction between mandatory and permissive statutes depends upon the intent of the legislature. *See New Castle v. Rand*, 102 N.H. 16, 20, 148 A.2d 658, 661 (1959).

It appears from the decree of the trial court that the judge denied the requests of the plaintiff for fines, costs, and attorney's fees, in part, because of the involvement of the town counsel in a prior matter of litigation in which he had represented Mr. Harvey and because the children of Mr. Harvey had done nothing to the property since the time of the conveyance. *But see Henry and Murphy, Inc. v. Town of Allenstown*, 120 N.H. 910, 913, 424 A.2d 1132, 1134 (1980); *Beck v. Town of Raymond*, 118 N.H. at 787, 394 A.2d at 849–50; RSA 36:24-a (Supp. 1979).

■ The trial judge was warranted in deciding not to impose court costs and attorney's fees because, as evidenced by the language used, this form of relief was discretionary. The juxtaposition of the word "shall" in that same regulation, however, clearly indicates the intent of the planning board (and the legislature in RSA 36:27) to make mandatory the imposition of the $500 penalty for each lot improperly transferred. *See* 2A C. SANDS, SUTHERLAND STATUTORY CONSTRUCTION § 57.11 (3rd ed. rev. 1973). Likewise, the zoning ordinance required enforcement of the monetary penalty expressed therein. Accordingly, we uphold the trial court's denial of attorney's fees, but remand to the court for assessment against the defendant of the penalties provided for under the zoning ordinance and the subdivision regulation.

■ In *State v. Mullen* we held that the second offense of driving while intoxicated statute, which provides for a minimum seven-day sentence, did not abrogate all statutory and inherent judicial powers of suspension. 119 N.H. 703, 707–09, 406 A.2d 698, 700–02 (1979); *see State v. Burroughs*, 113 N.H. 21, 300 A.2d 315 (1973). The court further explained that the legislature could foreclose the common-law right of the courts to suspend a criminal sentence by explicitly stating this in the legislation. *State v. Mullen, supra* at 708, 406 A.2d at 701; *see State v. Dean*, 115 N.H. 520, 523, 345 A.2d 408, 411 (1975). It is well established that courts have the authority "to suspend the imposition or execution of the sentence if the interests of justice so require." *State v. Burroughs, supra* at 25, 300 A.2d at 318.

Prompted by the above considerations relating to the area of criminal law, we suggest that the trial court determine whether the interests of justice require suspension of the penalties which it will have imposed. The record before us includes the decree of the trial court and clearly states the reasons for the denial of the imposition of the sanctions. Although the refusal to assess the penalties by the court was error, the findings below as they relate to this denial should be considered in an inquiry into suspension of the fines in the interests of justice. Remand for this limited purpose "will not unduly burden . . . the [court] and may be made on the record before it . . . ." *Legislative Util. Consumers' Council v. Granite State Elec. Co.*, 119 N.H. 359, 367, 402 A.2d 644, 649 (1979).

We have consolidated with the *Harvey* case two other cases concerning the Town of Nottingham and Lee Homes, Inc. (Lee). The dispute between the town and Lee originated in 1976 when the town sought injunctive relief in superior court against Lee, alleging that it had located two mobile homes on a tract of real estate without complying with the local zoning ordinance described above. The town further alleged that Lee had violated the "solid foundation" provision of the town building code. The validity of the ordinance and subdivision regulations was not raised and therefore was not at issue. After a hearing, the master ruled that Lee had violated the ordinance and the building code. In the prior transfer of this case we remanded to the superior court for a determination whether the part of the town building code requiring that mobile homes be set on solid foundations of masonry walls was in conflict with RSA 31:116 (Supp. 1977). *Town of Nottingham v. Lee Homes, Inc.*, 118 N.H. 438, 444, 388 A.2d 940, 944 (1978).

Apprised of the pending *Harvey* action and attempting to join in the challenge of the validity of the ordinance and regulations, Lee filed "a motion to annul or vacate judgment and petition for a new trial." The motion was denied by *Bean*, J., who ruled that the suit was barred by "res judicata." On remand, after hearing, the court found that the solid foundation requirement conflicted with RSA 31:116 (Supp. 1979) and dissolved its injunction as it related to that requirement. The town now appeals the dissolution of the injunction and Lee the denial of its motion.

Because of our holding in the foregoing *Harvey* appeal, we need not consider Lee's argument relating to the denial of its motion for a new trial. We now address the town's contention in its cross appeal.

RSA 31:116 (Supp. 1979), enacted during the pendency of the

previous transfer of this case, provides that: "No town shall impose requirements that mobile homes be placed on other than structural carriers designed for that purpose."

The plaintiff town argues that to make this provision apply to the defendants in this case would violate N.H. CONST. pt. 1, art. 23 prohibiting retrospective laws. In the first place, we fail to see how the application of RSA 31:116 (Supp. 1979) constituted retrospective application. The trial court simply dissolved its injunction to allow defendants the benefit of the statute in the future. In the second place, it has long been established that the provisions of part 1 of our Constitution, which constitutes our Bill of Rights, are restrictions on government action which protect our private citizens, not the government. *Hodge v. Manchester*, 79 N.H. 437, 438, 111 A. 385, 386 (1920); *Wooster v. Plymouth*, 62 N.H. 193, 201 (1882); *Dartmouth College v. Woodward*, 1 N.H. 111, 129 (1817). The town is, therefore, not entitled to the benefit of N.H. CONST. pt. 1, art. 23, because it is a mere political subdivision of the State over which the legislature may exercise complete control except as provided by N.H. CONST. pt. 1, art. 39, which is not applicable here. *See Dover v. Wentworth-Douglass Hosp. Trustees*, 114 N.H. 123, 125, 316 A.2d 183, 184 (1974); *Lisbon v. Lisbon Village District*, 104 N.H. 255, 258, 183 A.2d 250, 253 (1962).

Moreover, we thought we had made it clear in our prior decision in this case, which was not questioned by the plaintiff town, that RSA 31:116 (Supp. 1977) would prohibit the enforcement of the town building code if it conflicted with the State statute. *Town of Nottingham v. Lee Homes, Inc.*, 118 N.H. at 444, 388 A.2d at 944; *cf. Bourne v. Sullivan*, 104 N.H. 348, 354, 186 A.2d 834, 838–39 (1962).

Plaintiff also argues that there is no conflict between its solid foundation requirement and RSA 31:116 (Supp. 1979). We disagree. The language of the statute is clear and unambiguous. It prohibits towns from requiring anything in the way of a foundation beyond the "structural carriers designed for that purpose." It does not prohibit owners from using additional foundations if they wish, but it does prohibit towns from requiring anything more or different, and at the same time allows towns to require the use of structural carriers designed for the purpose. The plaintiff's argument that the statute was intended only to prevent towns from requiring that the "structural carriers" be removed is at odds with the unambiguous language of the statute which clearly confines the power of towns to the requirement of "structural carriers." If it had been the intent of the legislature to

allow towns to require foundations in addition to the structural carriers, it could have expressly and affirmatively provided so. The present statute is definitely negative in language and thrust.

The trial court has found that the requirement of the town ordinance is in conflict with the statute. We hold that the trial court was correct and that the code requirement is therefore invalid.

In summary, we affirm the finding of the trial court that the town had validly adopted the zoning ordinance and subdivision regulations and the amendments thereto, and we further agree with the court that the improperly transferred property should be reconveyed to Harvey. We remand, however, for the imposition of the mandatory penalties and for an inquiry whether the imposition of those penalties should be suspended in the interest of justice. Additionally, we hold that the solid foundation requirement of the town conflicts with RSA 31:116 (Supp. 1977) and thereby affirm the dissolution of the injunction.

*Exceptions overruled in part; sustained in part; remanded.*

BROCK, J., concurs in the result reached.