Rockingham
No. 86-237

JOHN M. ALEXANDER

v.

TOWN OF HAMPSTEAD

April 3, 1987

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Martha V. Gordon* on the brief and orally), for the plaintiff.

*Carol A. Rolf P.A.*, of Amherst (*Carol A. Rolf* on the brief and orally), for the defendant.

BATCHELDER, J.   In violation of the Hampstead zoning ordinance, the plaintiff built the shell of a second story and a new roof on his

home. After the town ordered him to halt construction and denied him permission to occupy the second floor, he applied for a variance. The Superior Court (*O'Neil*, J.) approved the recommendation of the Master (*Charles Gallagher*, Esq.) that denial of the variance be approved and that the town's ordinance be enforced by ordering the plaintiff to tear down and remove the non-conforming addition. We find little justice on either side, but, on the facts before us, the law favors the town. We therefore affirm.

The plaintiff's house is in Recreational Zone B, on the shore of Wash Pond in Hampstead, where article III, section V of the town's zoning ordinance restricts houses to one and one-half stories. The plaintiff began construction without either a building permit or a zoning variance. After the town ordered the plaintiff to stop work, he applied for a variance, but the board of adjustment denied the application on the ground that "any hardship was owner-created."

Hampstead's zoning ordinance was adopted in 1952 "[i]n order to retain the beauty and countrified atmosphere of the Town of Hampstead, and to promote health, safety, morals, order, convenience, peace, prosperity, and general welfare of its inhabitants. . . ." At trial and in their briefs, the parties focussed on whether the ordinance preserves the view of and from the lake, the abutters' rights to light and air, and the architectural consistency of the zone. The plaintiff urges that a second story on his house does not diminish the abutters' view or their light, and nobody has seriously suggested that the neighborhood is architecturally harmonious, let alone homogeneous.

The evidence also shows that the town has not previously enforced the one and one-half story restriction. The previous building inspector approved building permits in Recreational Zone B for houses designated on the permit as two-story houses, when the permittee had no zoning variance. The present building inspector, who is also the tax assessor, has assessed several homes in the zone as two-story houses.

The plaintiff asks us to reverse both the denial of the variance and the order to remove his addition and to declare article III, section V unconstitutional. He makes four arguments on appeal: (1) the limitation to one and one-half story is impermissibly vague; (2) the limitation bears no reasonable relationship to the aesthetic purpose it purports to accomplish; (3) the town is estopped from enforcing the limitation against the plaintiff because such enforcement would be impermissibly discriminatory; and (4) the master erred in upholding the board of adjustment's denial of the plaintiff's request for a variance when, on balance, the public benefit was outweighed by the plaintiff's loss.

A. *Vagueness*

The plaintiff argues that the one and one-half story restriction is void for being vague. He argues, more specifically, that the restriction is sufficiently unclear to permit arbitrary and discriminatory enforcement, referring to the standard of *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ("[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them."). To demonstrate this unclarity, the plaintiff points to the different definition of one and one-half stories advanced by each of four witnesses. Having demonstrated the variety of interpretations, the plaintiff then asserts that the vagueness of the ordinance not only creates the potential for discriminatory enforcement, but has, in fact, resulted in discriminatory enforcement. Lastly, the plaintiff cites *Johnson v. Linton*, 491 S.W.2d 189, 196 (Tex. Civ. App. 1973), for the proposition that the phrase one and one-half stories is vague as a matter of law.

We note at the outset that the plaintiff has the burden of overcoming the presumption that the ordinance is valid. *Town of Nottingham v. Harvey*, 120 N.H. 889, 892, 424 A.2d 1125, 1127 (1980). Our standard for vagueness is that, "[g]enerally, a municipal ordinance must be framed in terms sufficiently clear, definite, and certain, so that an average [person] after reading it will understand when [one] is violating its provisions." *Town of Freedom v. Gillespie*, 120 N.H. 576, 580, 419 A.2d 1090, 1092 (1980) (citing 56 AM. JUR. 2d *Municipal Corporations* § 367). "An ordinance is not necessarily vague because it does not precisely apprise one of the standards by which an administrative board will make its decision." *Id. See also Carbonneau v. Town of Rye*, 120 N.H. 96, 98, 411 A.2d 1110, 1112 (1980). The record strongly suggests that the plaintiff knew his addition of a second story would violate the story restriction, but proceeded under the mistaken belief that he had complied with the town's requirements for a variance. The master's findings largely reflect the evidence. Under these circumstances, the plaintiff may not claim the ordinance is universally vague, but only that his own conduct was not clearly prohibited. *In re Doe*, 123 N.H. 634, 642, 465 A.2d 924, 930 (1983) (applying *Parker v. Levy*, 417 U.S. 733, 755–56 (1974)).

At trial, each witness who was asked how many stories the plaintiff's house had answered that it had two. The fact that one and one-half stories may be arranged in various patterns and heights does not change the fact that a two-story house is not a one and one-half story house. We might, by way of analogy, hypothesize an ordinance requiring commercial buildings to be built with stone and

glass exteriors. This not only would permit granite, marble, and any other stone, but also might be vague as to brick exteriors; but it clearly would not permit cedar shingles. The same is true in our case.

B. *Reasonability*

The plaintiff also argues that the ordinance is not a reasonable means of achieving the town's concededly legitimate purpose of aesthetic regulation. The town stated in its answer to the plaintiff's interrogatories that the purpose of the one and one-half story limitation was to preserve views of the abutting water body, maintain and enhance property values due to those views, create a socio-homogenetic neighborhood, preserve the recreational zone atmosphere, and preserve abutters' rights to light and air. Next, the plaintiff points out uncontradicted testimony that the limitation on stories does not mean that a one and one-half story house would necessarily have a lower roofline than a two-story house. He continues that since it is the height of the roofline, rather than the number of stories, that affects the view of the lake, the story restriction has no rational relationship to the ordinance's purpose. Citing *Town of Chesterfield v. Brooks*, 126 N.H. 64, 489 A.2d 600 (1985), the plaintiff concludes that the ordinance is invalid.

The height of a building clearly has a rational relationship to its impact on light, air, and the preservation of the rural character of the neighborhood. The question is whether the story restriction is a height restriction, and the answer is obviously yes. The fact that some two-story houses may have a lower roofline than some one and one-half story houses does not alter the fact that many two-story houses will have rooflines taller than even the tallest one and one-half story house. While the ordinance might be more artfully written if it were framed as a specific height limitation, we do not believe the present ordinance is an improper exercise in legislative line drawing. *See Town of Windham v. Alfond*, 129 N.H. 24, 30, 523 A.2d 42, 46 (1986); *Estate of Cargill v. City of Rochester*, 119 N.H. 661, 667, 406 A.2d 704, 707 (1979).

*Town of Chesterfield v. Brooks supra* does not rescue the plaintiff. In that case, we invalidated a zoning ordinance that required manufactured "mobile" homes to be located on unpaved roads or set back at least five hundred feet from a paved road. The purpose of the ordinance was to preserve the "Currier and Ives" charm of the town. *Id.* at 69, 489 A.2d at 604. We could not find a rational relationship between the location restriction and the preservation of the town's charm. We did find that the ordinance substantially burdened

owners of mobile homes as a class. In contrast, Hampstead's ordinance is rationally related to preserving a countrified atmosphere, and even to preserving light, air, and views. That the relationship would be clearer with a specific height restriction does not invalidate the ordinance. Furthermore, a limitation to one and one-half stories, with all the flexibility of design permitted by that limitation, does not substantially burden property owners in Recreational Zone B who want to build two-story homes. On this point, we note also that the record suggests that the plaintiff could have achieved sufficient expansion of his living space within the constraints of the ordinance.

C. *Discriminatory Enforcement and Denial of the Variance*

The heart of the plaintiff's complaint is that his addition is harmless, that the town has unfairly singled him out for enforcement, and that whatever benefit the public derives from prohibiting his addition is far outweighed by his loss due to the prohibition.

The plaintiff's frequent reference in his brief to discriminatory enforcement does not clearly distinguish between the stop-work order and the denial of the variance. If the reference were to the stop-work order only, the plaintiff's failure to obtain a permit would end our inquiry. *See State v. Poulos*, 97 N.H. 352, 88 A.2d 860 (1952), *aff'd sub nom. Poulos v. New Hampshire*, 345 U.S. 395 (1953); *State v. Stevens*, 78 N.H. 268, 269–70, 99 A. 723, 725 (1916). However, in his superior court appeal of the decision of the board of adjustment, the plaintiff declared, in part, that the town "discriminated, consciously and intentionally, against Petitioner by denying him a variance and/or building permit." We do not find this language in the plaintiff's brief, but we will give him the benefit of the doubt and assume he has incorporated it into the general assertion of discriminatory enforcement.

For the plaintiff to show that the town's enforcement was discriminatory, he must show more than that it was merely historically lax. In *City of Concord v. Tompkins*, 124 N.H. 463, 471 A.2d 1152 (1984), we stated that "a municipality's failure to enforce an ordinance does not constitute ratification of a policy of nonenforcement and, consequently, will not estop a municipality's subsequent enforcement of the ordinance." *Id.* at 470, 471 A.2d at 1155–56. Instead, the plaintiff must show that the selective enforcement of the ordinance against him a was a "conscious intentional discrimination." *See Weare v. Stone*, 114 N.H. 80, 82, 314 A.2d 638, 639 (1974); *see also Yick Wo v. Hopkins*, 118 U.S. 356 (1886). Additionally, it is conceivable that a pattern of nonenforcement would be so systematic as to constitute ratification of a policy of nonenforcement.

*See State v. Vadnais*, 295 Minn. 17, 19, 202 N.W.2d 657, 659 (1972); *Dalton v. Van Dien*, 339 N.Y.S.2d 378, 382–84 (Sup. Ct. 1972).

■■ The master determined that the town "acted in good faith even though some building permits slipped by which upon further examination might have been denied." We will not overrule the findings of the master unless they are unsupported by the evidence or erroneous as a matter of law. *Claridge v. N.H. Wetlands Bd.*, 125 N.H. 745, 748, 485 A.2d 287, 289 (1984). The record in the present case shows that the Hampstead officials responsible for enforcing the zoning ordinances disputed the plaintiff's allegation of discrimination. They claimed that they believed certain homes which the plaintiff believed were two-story homes actually had only one and one-half stories or else were not in Recreational Zone B. Apparently the master believed that testimony, as it was his prerogative to do. *In re Adoption of Baby C.*, 125 N.H. 216, 225, 480 A.2d 101, 106 (1984). Accordingly, we affirm his finding that the town acted in good faith. However, we affirm that finding with a caveat. The town's neglect of the story limit in Recreational Zone B comes as near the brink of systematic nonenforcement as a town can come before a finding of good faith would be unsupportable.

We turn then to a review of the board of adjustment's denial of the plaintiff's application for a variance. The plaintiff contends in his brief that "where a zoning regulation, as applied to a particular property, is unnecessary to accomplish a legitimate public purpose, or the gain to the public is slight but the harm to the citizen or his property is great, the exercise of the police power becomes arbitrary and unreasonable." Although the plaintiff relies on *Metzger v. Town of Brentwood*, 117 N.H. 497, 503, 374 A.2d 954, 958 (1977), he fails to recognize that the case concerned a challenge to the validity of an ordinance as applied, not to the propriety of denying a variance from its terms, which is the issue before us now.

■■ We have frequently enunciated a five-part test for granting variances.

> "To obtain a variance certain conditions must be met:
> '(1) no diminution in value of surrounding properties would be suffered; (2) granting the permit would be of benefit to the public interest; (3) denial of the permit would result in unnecessary hardship to the owner seeking it; (4) granting the permit would do substantial justice; (5) the use must not be contrary to the spirit of the ordinance.'"

*Moore v. City of Rochester*, 121 N.H. 100, 101, 427 A.2d 10, 11 (1981) (quoting *Ouimette v. City of Somersworth*, 119 N.H. 292, 294, 402 A.2d 159, 161 (1979)). "[H]ardship exists when an ordinance unduly restricts the use to which land may be put." *Governor's Island Club v. Town of Gilford*, 124 N.H. 126, 130, 467 A.2d 246, 248 (1983). "The hardship must arise from a special condition of the land which distinguishes it from other land in the same area with respect to [its] suitability for the use for which it is zoned." *Ryan v. City of Manchester Zoning Board*, 123 N.H. 170, 173, 459 A.2d 244, 245 (1983). The plaintiff urges that his lot is distinguished by being a double lot. This is not the sort of distinction envisioned by *Ryan*. In *Richardson v. Town of Salisbury*, 123 N.H. 93, 96, 455 A.2d 1059, 1061 (1983), we held that the size and dimensions of a parcel did not create any hardship or undue restriction on its use when the land could still be used for the purposes permitted by the zoning ordinance. We have also held, in regard to the meaning of "hardship":

> "For hardship to exist under our test, the deprivation resulting from application of the ordinance must be so great as to effectively prevent the owner from making any reasonable use of the land. *See Assoc. Home Util's, Inc. v. Town of Bedford*, 120 N.H. 812, 817, 424 A.2d 186, 189–90 (1980). If the land is reasonably suitable for a permitted use, then there is no hardship and no ground for a variance, even if the other four parts of the five-part test have been met."

*Governor's Island Club v. Town of Gilford, supra* at 130, 467 A.2d at 248.

When we apply these rules to the present case, the plaintiff fails. The evidence supports a conclusion that the plaintiff's lot is neither so unusual nor so unsuited to the permitted use that denial of the permit would result in unnecessary hardship to him. In regard to the plaintiff's lost expenditure, in considering a property owner's application for a variance, we think a board of adjustment must base its decision on the condition of the land before the applicant altered it in violation of the law. *See Wilkins v. City of San Bernardino*, 29 Cal. 2d 332, 342, 175 P.2d 542, 549 (1946) (en banc). A property owner cannot benefit from his knowing violation or disregard of the law by making an illegal alteration to his property and then claiming it would be an unfair hardship to deprive him of his improvement. *Id.*, 175 P.2d at 549–50; *Biggs v. Town of Sandwich*, 124 N.H. 421, 428, 470 A.2d 928, 930 (1984). To summarize, the ordinance is not so vague that the plaintiff could not have known

that his conduct was forbidden; the relationship of a story limitation to aesthetic preservation is loose but not irrational; and the denial of the variance was not discriminatory.

*Affirmed.*

BROCK, C.J., dissented; the others concurred.

BROCK, C.J., dissenting: Because I would hold that there is insufficient relationship between the ordinance at issue and its intended purpose, and because I believe that the town should be estopped from enforcing the ordinance against the plaintiff because of its demonstrated pattern of selective, inconsistent and discriminatory enforcement of the ordinance, I respectfully dissent.